IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NORBERT K. THINNES,

                              Petitioner,

        v.                            Civil Action Number 3:05CV351

DIRECTOR, VIRGINIA DEPARTMENT
OF CORRECTIONS,

                              Respondent.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Norbert K. Thinnes's , ("Petitioner") writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner contends that he is entitled to habeas relief because: 1) Counsel failed to file an appeal or consult with petitioner about filing an appeal; and 2) the state court's sentencing order dated June 2, 2003, is *void ab initio* because the order exceeds the court's jurisdiction by conditioning the suspension of the life sentence upon the requirement that the Petitioner serve forty years (40) years in prison. Respondent has moved to dismiss on the grounds that Claim One lacks merit and that Claim Two is defaulted. Upon review of the record, the Court concludes Respondent's Motion to Dismiss must be GRANTED and Petitioner's writ of habeas corpus pursuant to 28 U.S.C. § 2254 must be DENIED.

**I.    Summary of Facts**

In the beginning of September 2002, Mary Thinnes, the Petitioner's estranged wife, obtained a permanent protective order against the Petitioner because he had threatened her. On September 22, 2002, the Petitioner broke into Mary's house armed with a knife and threatened to kill her in front of their seven and four year old daughters. The Petitioner told Mary that, "I'm going to cut

your boobs off and hold them in my hands because if I can't have you, no other man is going to have you, I'm going . . . . I'm going to slit your throat so that you die slowly." Tr. at 149. Petitioner then struck at Mary with the knife. Mary blocked the blow, but it cut the main nerve to her thumb. Petitioner dragged Mary to the garage where he struck her with a flashlight and told her how he intended to dismember her. Mary escaped from Petitioner and fled into the house. The police arrived on the scene with Petitioner yelling that he was going to kill her before the police could get to her. Fortunately, the police were able to apprehend the Petitioner before he could kill Mary.

Prior to trial, Petitioner pled guilty to charges of destruction of property and abduction and pled not guilty to charges of malicious wounding and breaking and entering while armed with a deadly weapon.

The Commonwealth insisted on a jury trial. Petitioner and his counsel determined to challenge the sufficiency of the evidence after the Commonwealth rested. If the Circuit Court denied the motion to strike, then Thinnes would enter guilty pleas to the malicious wounding and breaking and entering charges. Petitioner decided on this strategy after consultation with counsel who advised him that it would allow him to retain the ability to be sentenced by a judge and hopefully within the state discretionary state sentencing guidelines. Petitioner faced the following potential penalties for his crimes:

- Breaking and entering while armed with a deadly weapon   twenty years to life
- Malicious wounding   five to twenty years
- Abduction   one to ten years
- Property damage   one to five years

In light of the Petitioner's spotless criminal record, the state sentencing guidelines, proposed a sentence of between five years and eight months, ten years and one month for all of his offenses.

At the conclusion of the Commonwealth's case, the Circuit Court denied Petitioner's motion to strike.  Petitioner then entered *Alford* pleas[1] to the charges of malicious wounding and breaking and entering while armed with a deadly weapon with the intent to commit murder.  During the course of his plea colloquy, Petitioner acknowledged that he would have been found guilty by the jury on those charges and that he could not risk being sentenced by the jury.  The Petitioner further acknowledged that despite his plea, the Circuit Court could imposed a life sentence on the breaking and entering charge and a twenty year sentence on the malicious wounding charge.  Tr. at 189–90.

At sentencing, the Commonwealth introduced the testimony of Investigator Barton.  Barton testified that he had spoken with Shawn Archie, an inmate who had been detained with Petitioner in jail.  According to Archie, after his incarceration, Petitioner had sought Archie's assistance in hiring someone to kill Petitioner's estranged wife.  Counsel's objection to the introduction of this hearsay testimony was overruled.  However, the Circuit Court never mentioned that testimony in imposing the following active terms of imprisonment on June 2, 2003:

| | |
|---|---|
| • Breaking and entering while armed with a deadly weapon | forty years[2] |
| • Malicious wounding | ten years |
| • Abduction | five years |
| • Property damage | five years |

Following sentencing, counsel filed a motion for modification of sentence.  Counsel represented that the motion was prompted because,

> [f]ollowing the Court's sentence, obviously, Mr. Thinnes' immediate family was quite upset, as the Court might imagine, given the sixty year sentence which he received and, as is often the case, families, defendants, wonder if there is anything that can be done, and we had

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970).

[2] The Circuit Court sentenced petitioner to life in prison on the breaking and entering charge and then suspended all but forty years of the life term.

3

> the usual talk which I have with defendants, which is certainly a motion can be filed but, quite frankly, in twenty-one years of experience, I think I've had two granted perhaps . . . .

Mot. to Reconsider Tr. at 225. On September 23, 2003, the Circuit Court denied the motion.

On June 2, 2004, Petitioner filed a petition for a writ of habeas corpus with the Circuit Court raising the same two grounds he presented in his federal petition. The undisputed evidence reflected that Thinnes had never asked whether he could appeal nor requested counsel to file an appeal. The Circuit Court dismissed the first claim because it found that the Petitioner had not demonstrated deficiency or prejudice. The Circuit Court specifically found that Petitioner did not reasonably demonstrate to counsel that he was interested in appealing and that a rational defendant would not have wanted to appeal. The Circuit Court found that the second claim was barred by the decision in *Slayton v. Parrigan*, 207 S.E.2d 68 (Va. 1974) because it could have been but was not raised on direct appeal. The Supreme Court of Virginia refused Petitioner's appeal.

## II. Constraints Upon Federal Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that this standard places an additional hurdle before federal habeas petitioners who now must demonstrate not only that the state court's

decision was erroneous or incorrect, but also that it was unreasonable. *See Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Petitioner has failed to show that the state court's decision was incorrect, or that the state court's decision was unreasonable.

### III.     Analysis of Petitioner's Claims

In order to establish a Sixth Amendment violation based on counsel's failure to appeal, a defendant must prove that (1) counsel was ineffective and (2) but for counsel's ineffectiveness, a timely appeal would have been filed. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). An attorney who fails to file an appeal after being instructed by his client to do so is *per se* ineffective. *Id.*

When, as here, a client does not specifically instruct counsel regarding an appeal, the next question is whether counsel consulted with the defendant about an appeal. *Id.* at 478. Consulting entails advising the defendant of the advantages and disadvantages of appealing and making a reasonable effort to discover the defendant's wishes. *Id.* Counsel is not, however, constitutionally required to consult with the defendant about an appeal in every case. *Id.* at 479. Counsel has "a constitutionally imposed duty to consult with a defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.

The Court observed that "[w]e expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." *Id.* at 481. Nevertheless, the majority rejected Justice Souter's assertion that the analysis should begin with the "'almost' bright line rule . . . that counsel 'almost always' has a duty to consult with a defendant about an appeal." *Id.* at 480.

The Court found such an analysis to be "inconsistent with *Strickland*'s holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all of the circumstances.'" *Id.* at 478 (citing *Strickland v. Washington*, 466 U.S. 668, 688 (4th Cir. 1984)).  Despite this rejection, the Fourth Circuit has indicated that the inquiry begins with a rebuttable presumption that the lack of consultation demonstrates deficiency.  *See Frazer v. South Carolina*, 430 F.3d 696, 707 (4th Cir. 2005).  "Where, as here, the defendant has not specifically requested an appeal, counsel is under a professional obligation to 'consult' with defendant regarding [the appeal], unless circumstances demonstrate that consultation is unnecessary." *Id.* (citing *Flores-Ortega*, at 478– 9).

    **A.**    **Deficiency**

Because there were no viable grounds for appeal, counsel had no reason to think that a rational defendant in Thinnes's position would have wanted to appeal.  Virginia law is clear, that regardless of the state sentencing guidelines, the trial judge has nearly unlimited discretion in imposing what he deems to be an appropriate sentence.  *See Abdo v. Commonwealth*, 237 S.E.2d 900, 903 (Va. 1977) ("[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion."); *Belcher v. Commonwealth,* 435 S.E.2d 160, 161 (Va. App. 1993) (stating the guidelines are merely a tool and are not binding upon the trial judge).  In his habeas proceedings, Thinnes suggested that he could have challenged the Circuit Court's admission of hearsay testimony at sentencing.  Thinnes fails to explain why such a challenge is not frivolous in light of Virginia's practice that permits the Court to admit hearsay at sentencing and thereafter rely upon the hearsay if it "has some indicia of reliability." *Alger v. Commonwealth*, 450 S.E.2d 765, 768 (Va. App. 1994).  Nor does Thinnes offer any coherent legal explanation as to why the Court's sentence on the breaking and entering charge was void.  *See Wright v. Commonwealth*, 526 S.E.2d 784, 786 (Va.

App. 2000) ("After conviction . . . the court may suspend the sentence in whole or part . . . ."). Petitioner fails to demonstrate that viable appellate issues imposed a duty upon counsel to consult with him about an appeal.

Next, Petitioner asserts counsel had a duty to consult with him about an appeal because he "reasonably demonstrated to counsel" his interest in appealing. *Flores-Ortega*, 528 U.S. at 481. Petitioner offers scanty evidence of this demonstration. Petitioner swears that he was "very upset with the sentence imposed." State Pet. for Writ of Habeas Corpus at ¶ 18. Additionally, Petitioner directs the Court's attention to counsel's remark at the hearing on the motion for modification of sentence where he mentioned to the Circuit Court that after sentencing Petitioner and his family were "wonder[ing] if there is anything that can be done." Tr. at 225. While this is hardly a compelling demonstration of a desire to appeal, under the Fourth Circuit's construction of *Flores-Ortega,* it would require a finding of deficiency, because the circumstances do not "demonstrate that consultation is unnecessary." *See Frazer*, 430 F.3d at 707. However, the question ultimately before this Court is not whether counsel was deficient for failing to consult with Petitioner about pursuing an appeal. Rather, it is more the contorted question of whether in light of clearly established Supreme Court precedent, the Virginia court's conclusion that counsel was not deficient was unreasonable. *See* 28 U.S.C. § 2254(d). It is unnecessary to answer the question here, because Thinnes cannot demonstrate prejudice.

### B.     Prejudice

To demonstrate prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have **timely** appealed." *Flores-Ortega*, 528 U.S. at 482 (emphasis added). "[E]vidence that there were non-frivolous grounds for appeal or that the defendant in question promptly expressed a desire

to appeal will often be highly relevant in" demonstrating prejudice. *Id.* at 485. However, in the prejudice context, the Petitioner must make the "additional showing 'that, had he received reasonable advice from counsel about an appeal, he would have instructed his counsel to file an appeal.'" *Frazer v. South Carolina*, 430 F.3d 696, 708 (4th Cir. 2005) (quoting *Flores-Ortega*, 528 U.S. at 486).

Petitioner cannot point to any non-frivolous issue he would have wished to pursue on appeal. *Flores-Ortega,* 528 U.S. at 485. Thus, had Petitioner received reasonable advice from counsel about filing an appeal he would have been advised that there were no advantages to pursuing an appeal. Against this void of advantages, Petitioner would have been advised that there were in fact several disadvantages to pursuing an appeal. First, because counsel was retained, it would cost Petitioner money. Second, and more importantly, it could potentially undermine Petitioner's only hope for receiving a lesser sentence, the motion for modification of sentence.[3] Filing an appeal, where it was apparent there were no non-frivolous grounds for appeal, would not bolster Petitioner's purported contrition or the plea for mercy that was at the heart of Petitioner's motion for modification of sentence. Petitioner does not offer any explanation as to why after receiving such reasonable advice from counsel, he would have persisted in filing a frivolous appeal despite the possibility that it may have impacted his pending motion for modification of sentence. Petitioner simply insists that he would have pursued an appeal. The courts generally decline to afford great weight to a petitioner's post-hoc representation that he would have appealed or would have altered his plea but for the deficiency of counsel. *See Hooper v. Garraghty*, 845 F.2d. 471, 475 (4th Cir. 1988) (placing burden

---

[3] There is nothing in the record to suggest that Petitioner could have obtained a ruling on his motion for modification of sentence prior to the expiration of the thirty day period for filing a notice of appeal.

on defendant to establish a reasonable probability that if his lawyers would have obtained a psychiatric report, he would have rejected a plea agreement). Although Petitioner had expressed interest in modifying his sentence, Petitioner has not shown any significant probability that a consultation with counsel would have galvanized that interest into pursuing a timely appeal. *See Frazer*, 430 F.3d at 712. Indeed, from the record before the Virginia courts, Petitioner only clearly manifested a desire to appeal after his motion for modification of sentence proved unsuccessful and after the time for filing an appeal had elapsed. Under such circumstances, it was reasonable for the Virginia courts to conclude that Petitioner had not demonstrated prejudice.

### C. Claim Two

The Virginia courts found Claim Two—the state court's sentencing order dated June 2, 2003 is *void ab initio* because it exceeds the circuit court's jurisdiction—to be defaulted under an adequate and independent procedural rule. *See Mu'min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Thinnes has not demonstrated any basis for excusing his default.

### Conclusion

Petitioner has not met his burden of demonstrating prejudice from his counsel's representation, and this Court grants deference to the state court decision. Additionally, Petitioner's Second claim is barred from federal review. Petitioner's writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. Respondent's Motion to Dismiss is GRANTED. An accompanying Order shall issue.

/s/ JAMES R. SPENCER
CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this   23   day of March 2006